The counsel for Lampion?s executors, filed a petition for ct re-hearing, but before it was decided, the members of the then court resigned, and the present judges granted the prayer of the petition.

It is agreed, if the thing was changed, by operation, into a different species, as by making meal out of corn, or bread out of meal, it belongs to the operator, who has only to make satisfaction to the former proprietors, for the materials he had so converted. It is not, however, agreed, the right to the new species, depends on the possibility of re-producing the original materials out of the article. It is said by Justinian,, there had been much controversy on the subject of accession between the SabiniaUs and Proculeans, and that he had taken the middle opinion; and he does say, he deterined, that if the manufactured article can be reduced s former rude materials, the owner of such mate-hall be reckoned the owner of 'the species, but species cannot be so reduced; then he who is understood to be the owner of it. But he Is to give the examples, whereby it is clearly at he does not mean that the right depends alto-on the possibility of reducing the article to the rude materials. He gives these examples: 1 can be easily reduced to the rude mass of rer or gold, of which it was made, but lime, *457 oil or flour cannot be converted into grapes, olives or corn; neither can mulse be separated into wine and honey¿ It is certain, the chemist might separate the wine from the honey, -and more easily than he could make land of bricks.
Petition for a re-hearingi •
The right depends on whether the species has been changed or not, and that may generally depend on whether the thing can easily be reduced to the rude materials converted. We say easily, because that is reason, and the language of Justih'ian, and the exam* pies he and all other writers give, are all of that class. Cases of silver, &c. into cups, is the only class -of cases put by him. We say generally, because the proportion, the value of tl'e labor btears to the value of the materials, may certainly govern. It is said in Justinian, “to us it seems the better opinion, that the tablet should accede to the picture, for it is ridiculous, the painting 'of an Appelles or a Parhasius should yield as an accession to á worthless tablet.” No one would say, if a man take the flax of another, worth but one dollar, and make lace of it, worth $ 1000, the owner of the flax ought to have all the lace; and yet there would be no difficulty in reducing the lace to flax. It might be ravelled out and up|wisted, with infinitely less difficulty than the chemist would have in making land of hard burned bricks. The rule is; the right depends on the change of the species* or not, taking the language according to the common intendment, and on the proportions of the value of the species produced, to the original material, and the inquiry as to the case and expense with which the article might be reduced to the gross material; is made only in order tó apply the rule, not as a part of it. But let it be considered under either head; still regard must be had to the difficulty and expense of such reduction, surely, when it would cost ten times more to reduce the manufactured article to its original element, than all the worth, both in the original and improved state. Surely,' when no man would have the article, to be used by him, in thus reducing it, and not otherwise, the question of the chemical practicability of the reduction, can never be the subject of judicial inquiry. The owner may reclaim his doth, though made into a coat *458 He may recover bis cups, though changed into spoons»Because the coat is still cloth, and the spoons are still silver, and the metal is the principal value. But shall the iron monger pursue his iron through the steel, into the hand of the seamstress, and recover her cam-brick needles? Surely not.
Petition for a ro- hearing;
Preston had’ recorerect from Lamp-ton, a brick maker, the lot on which his brick were made, and the soil out of which made, possession had been taken, under a writ of habere facias. There were, upon the lot, thus recovered,at the time possession was taken, a quantity of burnt and unburnt bricks. Preston refu»ed to permit Lampton to remove them, and converted them to bis own use. Preston and. Lampton being dead, Lampton’s ex’rs. sued Preston’s ex’rs. for the value of the brick. Adjudged, that Preston, as owner of the soil, was entitled to the unburnt brick by paying for moulding, their species not having been changed; but that Lampton, the maker, was entitled to the burnt bricks, from the accession of value, and because their specific character was gone, and their nature so changed bv the oueration of fire, that they were not resolveable into ear,th, by ‘individual agency,’ and if, at all, only by the aid of foreign and extrin'sic additions. “I£ the material be so essentially changed as to prevent its renovation, by individual ageney, the owner has lost his right to it; & that, if the elements of the material have Rot been ; changed/but the specific thing which they constituted, cannot be re-produced, identically, by individual operation, the owner of the material does not own the species.”
*458 But the rude article taken here, was earth-ground* a part of the realty,- and it was worked up into goods, into personal property. If trees standing, growing trees, which are the property of the reversioner, be cut into pollard, they go to the tenant of the particular estate for life or years.
Here the material was,changed, into not only a different species, but a different class of property, governed by different laws. And the article produced, is such asno man ever attempted to reduce to the original earth, for the sake of the value oi the earth. It doe's not appear Lampton was a muta Jide holder of the land, or operator on the rude material. He did not make the brick to build on the ground. A rehearing is respectfully prayed';
Upon a re-heating Judge Robertson delivered the opinion of the court.
The principle which must decide this case, although extensive in its operation, has hot been familiar in practice, to the Courts of this country; nor has it been ascertained with philosophical accuracy, or defined with satisfactory precision, by either the civil or common law. And if it had been ever so perfectly deduced from the most scientific generalization, its application to this case, depends on analogies so nice, and1 facts so subtle, as to render the decision of this controversy as perplexing as it is important.
For these reasons we granted a re-hearing, on a petition to our predecessors, which had not been disposed of by them. The cause has been re-argued, and after all the reflection which we have been able to devote to the investigation, we will be compelled to pronounce an opinion entirely differing from that which was rendered.
So much of the civil law asjipplies to this subject, was incorporated by Bracton,- in his treatise on the laws of England, and its rules and directions, blended . *459 *• r. ■ hose of the common law. They have been reeogi.^ed ever since, as the doctrines of the common law, and therefore were transplanted in the American jurisprudence, with the stock on which they were en-grafted.
By exploring the civil and common law, so far as they be; x on this case, some confusion will be found in thei ' ules, as well as in the application of them to parti- i; ir cases. But there are two comprehensive end fundamental rules pervading all the authorities which have been consulted, on the doctrine of accession and of specification; from the first of which it is not known that there are any exceptions, and from the. last of which, it is believed that there cannot'be many. These rules are: 1st. That no trespasser, who takes property of another wantonly and without the owner’s consent, can ever acquire a right to it, by iihy “accession” or “specification,” whatsoever. 2d. H^hen the property of one comes to the possession of another, innocently, he may acquire the right to it, if by “accession” or “specification,” the species be change^ The difficulties of thi^^ase result from the various and indefinite charathe cases which have been excepted from this^^Hrule. It is, hence, very difficult to ascertain any pmciple of uniform and universal application, on which the rule itself is founded. £jn some authorities it is said that the proper test of the right of the first owner is, the identity of the thing or mate* rial. In others, its capacity for being reconverted into the original species; in others, the non-accession of adventitious value exceeding that of the original material; and in others, the retention, by the material, of its specific character, or kind or qualities. Thus, for example, Justinian says, in Lib. II, Tit. 1, pa. 76, “that if the species or manufactured articl^ can be reduced to its former rude materials, then the owner of such materials is to be reckoned the owner of the species; but if the species cannot be so reduced, then he who made it is understood to be the owner of it; for example, a vessel can easily be reduced to the rude mass of brass, silver or gold, of which it was made; but wdne, oil or flour cannot be converted into grapes, olives or corn, neither* can mulse be separated into wine and honejp/Tíut if a man makes any speci.es, *460 partly with his own and partly with the materials of another, as if, he should make mulse with his owr. wine and another’s honey, or should make a garment with an intermixture of his own wool with that of anfother, it is not to be doubted, in such cases, but that he who made the species is master of it,” &c.
L In page 81, he says that, if an artist paint a picture on the canvass of another, the whole belongs to the. painter$ “For (says he) it is ridiculous that the painting of an Appelles or a Parhasius should yield as an accession to a worthless tablet.^)
“Another rule is, that if the materials of one person» are united to the materials• belonging to another, by the labor of the latter, who furnishes the principal materials, the property, in the joint, product, is in the latter, by right of accession.” Kent’s Com. 2 vol. 294; see also Merrit vs. Johnson, 7 Johnson, 473. And in this case in 7 Johnson, in Pothier (in his Trade du droit? de proprietor and in Bracton, it is laid down, that if one “builds a vessel from the foundation, with the materials of another, the vessel belongs to the owner of the materials.”
But if money be made into a a^Kmhe property is so altered as to change the title” Bro/m^rroperty, 23. It seems to have been an established doctrine of the common law, as early as the year books, that no change of mere form could divest the right of the owner of the material, as leather made into shoes, cloth into a coat, timber into plank, blocks or shingles: in all which cases the material is not altered in its qualities or kind, and can be easily identified. 2 Kent’s Com. 296; Burris vs. Johnson, 1 J. J. Marshall, 196; and the authorities there cited.
These are some of the doctrines of the books. We shall endeavor to deduce from them something applicable to this case.
As to the first rule, (that a wilful trespasser cannot acquire a title to property by merely changing its species,) it is sustained by authority. See Dyer, 127; Curtis vs. Groat, 6 John’s. Repts. 169; and the above opinion in Burris vs. Johnson. But this rule has no application to this case. It is not pretended that *461 Lampión was a wilful trespasser. The decision, therefore, must depend entirely on the application or some modification of the second rule in relation to the consequences of “accession” or “specification,” when has been no intentional invasion of the property of another.
We are inclined to think, from a survey of all the f) authorities within our reach, that the accession of mere » value, by the application of labor or skill alone, is, \ generally, not sufficient to transfer the proprietorship ^ to the operator,) There must,in general, be the addition of some Other material belonging to the possessor { pr operator, before the product can vest in him^—If there be any exception from this rule, (and we do not ; doubt that t.heje may bq.) it must be in cases in which the accession of value to the raw material is so far beyond the origina] value, as to impress on the reason of mankind, the injustice of permitting the bona fide producer of that increased value, to be deprived of it, Such may be the case of the statuary. \A Phidias, a Michael Angeló, a Canova or a Chantry,'might be entitled, by the award of common sense and common justice, and therefore, of common law, to a marble statue of a Pericles, a Venus de Medicis, a Napoleon or a Washington, the chef-d'oeuvre” of his genius; although kihe unchisselled block was the property of another, ^oponverted innocently by the artist, without the owner’s knowledge, into the emblem of human excellence. This would be the decision of the French civilians, who have exploded the ancient and arbitrary doctrine of the Justinian code, that the author, (a Horace or Dante or a Milton for example) of an immortal Lyric or Epic, would not be entitled to the Poem, if it had been written on paper belonging to another! The reason assigned by Pothier and Toullier, for overruling this unreasonable “decision of the Roman law,” is, that the paper is of a value so greatly disproportionate to that of the Poem, that the author should be entitled to the production, by paying foi* the paper; the composi- • jion being considered the principal, and the paper the appendage or accessary. This reason is too comprehensive./^For it is not disputed that, if A. make cloth out of the wool of B. or a table or a boat entirely out of the timber of B. though the value, pf the new spe-. *462 cies exceeds that of the material more than two fold, the owner of the material, is entitled to the species. It would seem, therefore, that there must be some qualification of the rule, (that no accession of skill or labor merely, will change the right,) and that the principle which must regulate the restriction, is somewhat indeterminate. Every case must depend on its own peed» liar circumstances, with only this guide, that the case must be an extreme one, which will authorize an exception from the general rule.
When the authorities speak of rights by “ACCESSION,” they generally mean, accession of other materials as well as skill or labor; as in' the case of the cloth manufactured out of the wool of a stranger, and of the manufacturer. Here (he fabric would belong to the manufacturer; because the several parcels of wool could not be identified and separated. For, to acquire title by “accession” of materials, not only must the commixture be bona fide, but the materials which belong to another must be incapable of being restored to him in their original form; that is, the material must not possess all its original distinctive qualities; if it do, there has been no specific change 'in the nature or elements of the thing. And a mere change in the ex-, ternal shape or in the bulk, will be immaterial.
Right by “SPECIFICATION,” can only be acquired when, without the accession of any other material, that of another person, which has been used by the operator innocently, has been converted by him into something specifically different in the inherent and characteristic qualities, which identify it. Such is the conversion of corn into meal, of grapes into wine, &c. Here, although the meal possess no quality which the corn did not, yet it not only does not possess all the same qualities, but there is difference in the name, the character, the solidity, and every attribute which distinguishes one species from another. Meal and corn areas different, as lime and rock, or rye and whiskey. In such a case the rule as laid down in the books, is indefinite, and in some of the cases cited for illustration, seems to be two fold; 1st. That there must be a change of the species. 2d. That the thing‘changed inust be insusceptible of reduction to the original qua *463 lity and kind. The universal application of the laííer branch of the rule, seems to be irreconciieable with principle. The reason why the material of one which has been changed into a different species by is not to be restored to the original owner is, that it cannot be returned in kind. It is not the specific thing which belonged to him, and, therefore, is not his, and cannot be his, (though it may, by some chemical or mechanical process, be resolved into its. original elementary qualities,; unless the original material can be restored without any intrinsic change. Therefore, as long as it remains a new and essentially different species, it cannot be recovered by suit, from the person who effected the change in it. 'There may, however, be such a modification of a material of one man, by the operations of another, as to change its name and its specific identity, or individuality, without a mutatioh of its original qualities and ingredients. Such as the change effected by the conversion of bullion into'a cup or spoons, and of timber into plank or shingles. Here the cup is not the bullion, nor are the shingles the trees. The former'is, however, still silver, and the latter are still wood. The inherent and distinctive qualities of the material remain the same. In such a case there has been a.“specific” but not an essentialchange. The identity of the thing has been lost, but the essence of the material has undergone no change; for example, the bullion has been converted into a cup, which it would be improper to denominate bullion. But the essential and constituent particíes of each are the same, silver, and the identical silver of the mass of bullion. Here the two fold rule will apply. There has been a change in tlje species o.f the thing, but not of the material, and th^ cup can be reduced to bullion. It retains ail IheraRbutes of the lump of silver of which it was made. iWras silver, it remains silver, and the same silve?, it was, without any process of conversion or reduction.
But a cup made of coin, although the essence of the material (silver) is unchanged, can never be ¡ restored to coin again by any individual operation. It has lost the impress which gave it currency as coin, and this can never be given to it again, except by the sovereign power.
*464 tíence it results that if the material be so essentially changed as to prevent its renovation, by individual agency, the owner has lost his right to it; and that if the elements of the material have not been changed, but the specific thing which they constituted, cannot be re produced identically, by individual operation, the owner of the material does not own the new species. This is the true and rational doctrine of “specificationSuch seem to us to be the rules and distinctions which result from the elementary principles which is either deduced by reason or evolved by an induction of the facts of all the cases reported, so far as they are based on any fixed principle.
Having thus ascertained what we consider the true criterion, we shall proceed to test this case by it.
Accordingly it must be decided that the unburnt "'\Jbrick belong to the owner of the clay, on paying for \ the moulding. For, although in the form of brick, they could not, with strict propriety of language be i called clay, and, therefore, the embedded clay, out of \ which they were moulded; has undergone some change, yet as the material is still clay, and may be combined into a common mass, and constituid again a substratum ' for the soil, possessing all ihe qualities which it had before it was dug up, the owner of the soil can identi5 fy the clay in the artificial form of soft brick, and re- | cover it by law. But is this the case, according to' the same principle, with burnt brick? We think not.
Whether the right to the burnt brick be tested by the law, either of “accession’' or of “specification,” it >vould seem reasonable and consistent, that they belonged to Lampton., who made them.
T First; As to the right by “accesami.” We would Venture to decide that in such a ca^H^é accession of Value by labor alone, is such as to ^PPlne title to the brick in the manufacturer. A million of well burnt brick may be worth, $5,000. The clay with which they were moulded may not have been worth $20! if thesiatue, and the poem,and the painting,should belong' to the artist and the mathor, ought not the brick to' belong to the operahsrWThe rule for these cases is arbitrary; it must dependan a sound discretion, exercised on the peculiar ciitumstances of each individual *465 'case. Therefore, a decision in one case cannot be ^conclusive authority fdr* ány other case of different 'circutnsfmicesA It is ndt the excess of the artificial over the natum value, but the degree of such excess, that is the controlling principle in such cases. This degree is not and caiinot be ascertained with precision, and therefore, the decisions cannot be expected to present an exact conformity to any w'ell defined principle. All that can be known is, that When the disproportion of the value of the material, to that of the, product, is so great as to impress on the mind, the justice of considering the material the accessary and the production of the operator, the substantive species, the thing belongs to the producer of the new species. In looking at á fine painting, we never, consider the canvass; nor when wd admire a béáútiful statue, do wé put any estimate on the primitive marble. It is the new creation of the pencil and of the chisel, which is the sole object of our contemplations, and the sole ingredient in our estimation of value. We look upon and value the one as a fine picture, not as canvas's; the 'other as a noble statue, not a rudé unmeaning block of marble. Hence the production of the artist, is the principal, the material is only the incident.
We feel authorized to deduce the saihé decision from the facts in this case, in relation to the burnt brick. And another important reason applies in some degree to all these cases; that is, that the production1 of the artist or operator; éhoüld belong to him, “propter exeellentiam artisJ” Besides, there is in this case not Only an accession of value by labor; hut there is also an accession of other things to the clay; sand; water, and the effedMtfSffire by the combustion of wood. And on this alone, an analogy to the tiiulse made of the A. and the honey of B. we would feel inclined tOlftlPnk that the brick should belong to hmi who made them; . ^
y But the law of “specification” applies more directly to this case. In this view; it was decided by our preNdecéssors. We shall therefore proceed to consider it Von this ground. We are of the opinion that the burnt brick; are not clay. It seems to us, not only, that the process of burning, effected an essential change, in the *466 qualities of the native clay, and therefore, that the maker, is entitled to the brickd but if there has been no radical change in the'material, there has been such an one, as to prevent a re-solution of the brick into clay, or into the same kind of clay as that with wjfich they were made; and, that therefore, the brick belong to the maker. On both grounds or on either, if both or either be maintainable, the plaintiffs must succeed.
2*/ A well burnt brick, has very few of the qualities of ^tthe unwrought clay. .It has not its consistence, its ^.ductility, its compressibility, its tenacity; it can be y\ applied to none of the uses to which clay is adapted. /fThe moisture and every tiling else evaporable, has ''¡escaped, and does not exist in the brick. Why then [should the'brick be considered or denominated clay? Limestone is not lime, nor is it the elementary materials of which lime is compounded. In the laboratory of nature, these elements have all undergone an essential change, in the process of petrifaction. Is this change essentially greater than that of clay into burnt brick? The rock, by calcination, may be reduced to lime: so the brick may be pulverized; but the lime is not the identical material which constituted the rock. Nor is the brick dust the same material which constituted the clay; nor can it be reduced to the same kind of clay, if indeed (which we do not admit) it can be reduced to clay by any analysys, or combination, without the accession of other materials, which belonged to the clay initsnative state, but which were volatilized, BEFORE IT COULD MAKE BRICK./Lime is the basis of Limestone. Alumine is the basis of clay. The clay for bricks is a compound prinoámUy of alumine, and silex. It possesses other ing^SHk. But when the brick are burnt*they are no mMjjfflJpnne nor silex nor clay, ’than the rock is lime, ei^pmixed or unmixed with the other materials which composed the rock, or than bone is the phosphat of lime. The indents made a' cover for their dead, by drawing the* fibres of silex into thread, which they wove into an incombustible webb. To preserve the ashes of the dead body, unmixed with those of the funeral pile, the> enclosed the body in one of these webbs. This-fabric, called asbestos was silex alone. But it could not be *467 consolidated into a silecious mass as that from which it was drawn. Hence, if one should make it out of the material of another, it would belong to the manufacturen because, although there has been no change (as in the process of burning brick) in the qualities of the silex, yet, there has been such a change in the species as to render it impossible to restore the native material.
The same reason applies to brick. But another, also .applies, to-wit: that the inherent qualities of the clay, have been transmuted by burning. Porcelain is made of silecious and aluminous clay. In strict propriety, could a fine porcelain vase, be considered or denominated clay? Is it clay? Can it be resolved into clay, by any menstruum ofnature or art, without the accession of foreign materiáls or agents? A Wedgewood would be astounded, if he were told, that the finest earthen ware, elaborated by his skill, from the almost worthless clay of another, would be the property of that other. But this ware, however attenuated, is as much clay as brick are, and it can as easily be reduced to clay; but it is not clay, nor can it ever again,per se, become clay It therefore, belongs to the manufacturer. The diamond is carbon, and nothing hut-carbon, in a state of purity and high sublimation. But it is not charcoal, though charcoal may produce diamond, by loosing all its gross constituents. If diamond could be produced from charcoal, by any process of art, would it belong to the producer, or to the owner of the rude material? After it shall have been made, it is but the same carbon that existed in the charcoal; but it is in a different state, and is uncompounded. Can it be resolved into charcoal? It would belong to the producer, if it could be manufactured.-^So. the alumine and the silex in the brick, are the same that were in the clay; but they are in a different state and combination, and are not the original clay, with all its combinations and qualities; nor can they be reduced to the same clay.
< (The cambric needle, in the hand of the seamstress, is made of steel, the steel of iron, the iron of the native ore. There has been no chemical change of the particles, which compose the needle; but they are not *468 the identical particles which constituted the ore, non can they be resolved into them. Therefore, the nee-; die could not be recovered, by the owner of the raw material.
There would be no end to such illustrations. These are deemed sufficient, for shewing what we mean, when we state the principle, which must govern this case.
Shingles, tab|ps or boat?, &c,, made put of the timber of another, contain, so far as they contain any thing, the same particles, which constituted the timber, the specific qualities of the wood, are the same precisely; therefore, the material is exactly the same, and the new species must still belong to the owner of-the wood, when the accessary value has not been so great, as on the ground, to change the title.
These cases on each side, may serve to exemplify the principle, so far as it applies to “specification.” The necessary result, seems to be, that the burnt brick in this case, belonged to Lampton. Preston, in a suit for. me-SV-e profits, might have recovered for the use of th,e clay. 4s the bricks were personal, he could not get them by habere facias. He could only be entitled to them as chatties, on the ground that he owned the clay.
The cases cited from 6th and 6th Johnson, do not militate against this opinion, but as far as they go, tend to sustain it. The case of Betts and Church vs. Lee, 5 Johnson, 347, decides, that shingles belong to the owner of th.e timber, because, ‘^whatever alteration in FORM, property may have undergone, the original, owner may take it, in its new shape, if he can identity the original materials;” that is, the form is immaterial, if the material remain the s.ame. It is the same in the shingle, as it was. in the tree. There has been no. change in the material, the wood,; the only change is in the form. This accords with the doctrine which we have recognized. But the same reason does not apply to the brick, the converse is the fact of the case. The case of Curtis vs. Groat 6. Johnson, 169; decides, that a tresspasser, who knowingly cuts the timber of another, without his consent, and converts.it into coal, is not entitled to the coal, because he is a trespasser. This is all that is decided. It is true, that the opinion *469 intimate?, (what it was not necessary to say) that the timber could be identified in the coal, and therefore, ¿f there had been no trespass, the owner of the timber would be entitled to the coal. This would not be our opinion. But we do not suppose, if this intimation were ever so authoritative, that it would influence the decision of this case.
We know that a German chemist (Bergman) claims the merit of having discovered by various experiments near Upsal, that burnt brick, by being made wet, and exposed to the sun and elements for several years, may be dissolved. This discovery is not wonderful. No combination of matter is indistructible. Bricks ax-e not more than other material substances, immortal. Certain solvents, may decompose them. Time will not spare them.. But .how are they reduced to clay? And what sort of clay? These questions have been anticipated, and the experience and observation of all men, will furnish an answer, consistent with this opia-' ion. The animal, mineral and vegetable kingdoms, are all nothing but a combination of certain particles, which existed in an elementary state, and unorganized form. They may all be decomposed, and reduced to tlftrir elements; so of the brick. Sugar is but the sacharme matter of the cane, reduced to a separatetand concrete state. It maybe dissolved into a sweet juice. But it does not therefore belong to the owner of the cane.
Bricks are very enduring, when well bfl*nt by fire. It is. sqid by some oriental tourist, that even now, there remain, af the supposed scite of ancient Babylon, Brick, apparently in a perfect state, of which that city was built. Time has not reduced them to clay; and it never will, without the co-operation of other agents, and the accession of other materials, any more than the sqgar of the maple can be resolved into “sugar water” without the access of foreign agents.
The only thing like an authority, directly on the subject of the proprietorship of brick made by one man, with the clay of another, of which we have heard or which we have seen, is an expression in the opinion in the case of Port vs. Tuston, 2 Wilson’s Reports, 172. In deciding, in relation to another mattei’, the court *470 say, “ The case of a brick maker, is very different; the earth x manufactured, and turned into quite, a different thing.'1 Of course it was the opinion of that court, (hat the brick belonged to the maker. This we acknowledge is not positive authority, hut is persuasive argument: and being the only allusion which has been found in any book, to the question we are considering, is strongly confirmatory of the reasons, which we have offered in support of this opinion.
Monroe, for plaintiff; Denny and Haggin, for defendants.
Judgment reversed, and cause remanded for a judgment to be entered on the agreed case,'in favor of the plaintilfs.